## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

SUNLUST PICTURES, LLC,

      Plaintiff,

vs.

JOHN DOE,

      Defendant.

_____/

CASE NO.:12-CV-00656-CMA-KMT

**F I L E D**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

**MAY 2 3 2012**

**GREGORY C. LANGHAM**
**CLERK**

### JOHN DOE'S MOTION TO DISMISS AND/OR ISSUE A PROTECTIVE ORDER, AND INCORPORATED MEMORANDUM OF LAW

Movant John Doe, files this Motion and moves this Court to: dismiss and/or issue a protective order in connection with the subpoena (the "Subpoena") directed at Charter Communications Inc. ("CHARTER") and objects to the discovery sought. This Court should grant the relief requested. In support, the Movant relies on the following Memorandum of Law:

### I.    INTRODUCTION AND FACTUAL BACKGROUND

Plaintiff, Sunlust Pictures, LLC, is a California corporation. (Complaint ¶ 2.) Plaintiff neither alleges nor appears to transact business in Colorado or have any identifiable connections to Colorado. (*See generally* Compl.) Plaintiff claims to be the copyright holder of the video production titled Sunny Leone - Goddess. (Compl. ¶¶ 2-3.) Plaintiff alleges that the Defendant John Doe and 1,385 other "joint tortfeasors" are liable for the infringement, contributory infringement, and civil conspiracy to commit infringement and contributory infringement of Plaintiff's copyright in Sunny Leone - Goddesss. (See generally Compl.)

Although Plaintiff has technically brought this lawsuit against a single John Doe Defendant, the Complaint specifically alleges identical causes of action against 1,385 other individuals that Plaintiff refers to as "joint tortfeasors," yet are not named, even as John Does, in the lawsuit. (See Compl.) Plaintiff expressly states that it "intends to seek leave of the Court to amend this complaint to join John Doe's joint tortfeasors as defendants in this action pursuant to Fed. R. Civ. P. 20(a)(2), subject to the constraints of venue and personal jurisdiction." (Compl. ¶ 46.)

Plaintiff has also issued an unknown number of subpoenas seeking information about the identities of John Doe and his "joint tortfeasors," including a subpoena directed at the Internet Service Provider ("ISP") CHARTER seeking information regarding the identity of the Movant (the "Subpoena"). (See Exhibit "2" to the Declaration of John Doe, which is attached hereto as Exhibit "A" and is incorporated by reference herein at if set forth verbatim herein.)

Plaintiff's most recent pleading strategy of making allegations against hundreds, or in this case 1,386, ISP subscribers under the guise of a single John Doe Defendant and "joint tortfeasors" is its latest attempt to temporarily mask serious issues of personal jurisdiction and misjoinder in the face of stifling judicial headwind. It is an obvious attempt to sidestep precedent adverse to the Plaintiff, [1] and rob these individuals of the opportunity to challenge subpoenas seeking the disclosure of their confidential personally identifying information on file with their ISPs.

## II. ARGUMENT
### A. **It is Proper for this Court to Consider John Doe's Motion for a Rule 26 and/or 30(d) Protective Order**

Although Federal Rule of Civil Procedure 45(c) indicates that a Motion to Quash be filed in the district court for the district that issued the Subpoena, it does not alter the general rule that the broad outlines of discovery in a civil case are to be controlled by the court in which the case is filed. Straily v. UBS Fin. Servs., Inc., No. 07-cv-884-REB-KMT, 2008 WL 5378148, at *2 (D. Colo. Dec. 23, 2008); Static Control Components, Inc. v. Darkprint Imaging, 201 F.R.D. 431, 434 (M.D.N.C. 2001) (district where case was pending had authority to issue protective order, pursuant to its right to control general outline of discovery, even though the particular discovery dispute arose from subpoena issued in another district) (citing Fincher v. Keller Indus., Inc., 129 F.R.D. 123, 125 (M.D.N.C. 1990)); Best Western Int'l, Inc. v. Doe, No. cv-06-1537-PHX-DGC, 2006 WL 2091695, at *2 (D. Ariz. July 25, 2006) (Rule 45(c) provides that subpoenas should be enforced by the issuing district, but does not alter the broader concept that the district where action is pending has the right and responsibility to control the broad outline of discovery); Platinum Air Charters, LLC v. Aviation Ventures, Inc., No. 2:05-cv-01451-RCJ-LRL, 2007 WL 121674, at *3 (D. Nev. Jan. 10, 2007) (same); Pilcher v. Direct Equity Lending, No. 99-1245-JTM, 2000 WL 33170865, at *4 n.8 (D. Kan. Dec. 22,

---

[1] For example, a similar plaintiff filed a complaint against 939 John Doe defendants identified by their IP addresses in *Millennium TGA v. Does 1-939*, No. 1:11-cv-2176-RLW (D.D.C. Dec. 7, 2012) ("Millennium I"). The plaintiff voluntarily dismissed that action a week after filing, when the case was assigned to Judge Wilkins who had earlier denied a motion for leave to engage in discovery of ISPs in *Nu Image, Inc. v. Does 1-23*, 799 F.Supp.2d 34 (D.D.C. 2011). Thereafter, the plaintiff re-filed essentially the same complaint in the Southern District of Texas, the primary difference being that the new complaint listed only one "Doe Defendant" and alleged 938 unnamed Doe co-conspirators. *Millennium TGA, Inc. v. John Doe*, No. 4:11-cv-4501-VG (S.D. Tex., filed Dec. 20, 2012) ("Millennium II"). The 939 John Doe Defendants in *Millennium I* were identified by the exact same IP addresses

3

2000) ("Under Rule 26(c), the court in which the action is pending . . . has jurisdiction to issue a protective order limiting discovery"). A party's "discovery rights [in other districts] can rise no higher than their level in the district of trial." Fincher, 129 F.R.D. at 125. As such, this Court possesses the authority to both hear and grant the relief requested in John Doe's motion for a Rule 26 and/or 30(d) protective order to prohibit or limit discovery of his personally identifying information. Fed. R. Civ. P. 26(c)(1) ("a party may move for a protective order in the court where the action is pending"); Fed. R. Civ. P. 30(d)(3)(1) ("The motion may be filed in the court where the action is pending").

**B. Plaintiff has Not Demonstrated Good Cause to Conduct Early Discovery Regarding John Doe's Alleged "Joint Tortfeasors"**

Respectfully, this Court erred in finding that Plaintiff has demonstrated good cause to obtain expedited discovery of John Doe's personally identifying information.

Recently, the United States District Court for the Eastern District of California presided over a case nearly identical to the instant lawsuit, First Time Videos, LLC v. Doe, No. 2:11-cv-3478-GEB-EFB (E.D. Cal. Dec. 30, 2011). The plaintiff, First Time Videos, LLC, filed a complaint alleging causes of action for copyright infringement, civil conspiracy, and contributory infringement against a single John Doe defendant and 125 unnamed "co-conspirators," identified only by IP addresses. First Time Videos, Am. Compl. [Doc. No. 6], 2012 WL 663472. The plaintiff filed an ex parte application seeking leave to take expedited discovery prior to the Rule 26 conference in order to obtain the identities of the John Doe defendant and his co-conspirators. First Time Videos, Mot. for Misc. Relief [Doc. No. 7] & Hansmeier Decl. [Doc. No. 7-1]. After

lengthy discussion regarding the prerequisite that "good cause" be demonstrated prior to granting expedited discovery, the court denied the plaintiff's request for expedited discovery regarding the alleged "co-conspirators." The court reasoned:

> [P]laintiff ... has not shown good cause to conduct discovery regarding John Doe's alleged co-conspirators, whom plaintiff has not alleged as defendants in the amended complaint (naming only one doe defendant, John Doe, and asserting the plaintiff will "seek leave of the Court to amend this complaint to join John Doe's co-conspirators as defendants".... [B]ecause plaintiff's complaint does not purport to sue John Doe's alleged "co-conspirators" at this time, in light of the potential that some of the alleged co-conspirators are innocent internet users, plaintiff has not shown that the need to discover their identities at this early stage outweighs the prejudice to those individuals, or that the request to subpoena all of those individuals' ISPs is reasonable at this time, in light of all the surrounding circumstances. See Hansmeier Decl., ¶ 27 (stating that Hansmeier "personally observed John Doe's IP address ... downloading and uploading the Video in a BitTorrent swarm containing the other IP addresses listed in Exhibit A" and noting that those other users "could have aided John Doe").

First Time Video, Order [Doc. No. 9], at 5-6, 2012 WL 170167, at *3 (emphasis in original).[2]

Undeterred by the court's order, the plaintiff filed a renewed application to conduct expedited discovery, attaching a revised Hasnmeier declaration. First Time Video, Mot. for Misc. Relief [Doc. No. 10]. However, the court again denied plaintiff's request. First Time Video, Order [Doc. No. 11], 2012 WL 423714. Because the court had granted expedited discovery regarding John Doe's identity, it rejected as "unconvincing" plaintiff's argument that without expedited discovery regarding the identities of the alleged co-conspirators it would have no means to name and serve anyone with process,

---

[2]     Note that the language of the Hansmeier Declaration quoted and emphasized by the court in First Time Video is identical to the language found in paragraph 26 of the Hansmeier Declaration filed in this case.

compute damages attributed to the conspiracy, or establish testimony proving liability. Id.

at 10, 2012 WL 423714, at *6. Importantly, the court found that:

> [T]he revised application does not address ... the fact that plaintiff has not named the alleged co-conspirators in its complaint. See Dckt. No. 6 at 1, 9 (naming only one doe defendant, John Doe, and asserting that plaintiff will "seek leave of the Court to amend this complaint to join John Doe's co-conspirators as defendants...."). Although plaintiff contends that it may seek leave to join the co-conspirators, plaintiff has not done so, and it is not clear that the court would permit such joinder. See, e.g., SBO Pictures, Inc., 2011 WL 6002620, at *2-4; Hard Drive Prods., 2011 WL 5573960, at *4; Third Degree Films, 2011 WL 5374569, at *3-4; AF Holdings LLC, 2011 WL 2912909, at *2-4; Pac. Century Int'l Ltd., 2011 WL 5117424, at *2-4.

Id. at 9-10, 2012 WL 423714, at *6. Moreover, the court reasoned that:

> Although the revised Hansmeier declaration clarifies that he observed the co-conspirators' IP addresses engaged in the same downloading and uploading as John Doe, the declaration still does not establish that none of the internet subscribers whose information plaintiff seeks to obtain are innocent internet users. The concern remains that potentially non-offending users' information is being sought. As many courts have noted, "the ISP subscriber to whom a certain IP address was assigned may not be the same person who used the Internet connection for illicit purposes." SBO Pictures, Inc., 2011 WL 6002620, at *3; Pac. Century Int'l Ltd., 2011 WL 5117424, at *2; IO Group, Inc. v. Does 1-19, 2011 WL 772909, at *1 (N.D. Cal. Mar. 1, 2011). "For example, '[ISP] subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiff's works.'" SBO Pictures, Inc., 2011 WL 6002620, at *3 (quoting Third Degree Films v. Does 1-3577, 2011 WL 5374569 (N.D. Cal. Nov. 4, 2011)). Because plaintiff seeks information about the "ISP subscribers who were assigned certain IP addresses, instead of the actual Internet users who allegedly engaged in infringing activity, 'Plaintiff's sought-after discovery has the potential to draw numerous innocent internet users into the litigation, placing a burden upon them that weighs against allowing the discovery as designed.'" Id. (quoting Hard Drive Prods., 2011 WL 5573960, at *2). Additionally, as numerous other courts have noted, if the undersigned were to grant plaintiff's renewed request for expedited discovery regarding the alleged co-conspirators, "[p]laintiff would likely send settlement demands to the individuals whom the ISP identified as the IP subscriber. 'That individual – whether guilty of copyright infringement or not – would then have to decide whether to pay money to retain legal assistance to fight the claim that he or she illegally downloaded sexually explicit materials, or pay the

money demanded. This creates great potential for a coercive and unjust settlement.'" SBO Pictures, Inc., 2011 WL 6002620, at *3 (quoting Hard Drive Prods., 2011 WL 5573960, at *3).

Id. at 8-9, 2012 WL 423714, at *5.

This Court should follow the precedent established by First Time Videos and reverse its original finding of good cause for expedited discovery of the alleged "joint tortfeasors" personally identifying information from their ISPs. Until such a time, the Court should issue a protective order prohibiting or limiting the disclosure of John Doe's personally identifying information by CHARTER.

### C. A Protective Order Should Be Issued Because the Information Sought is Not Relevant to the Case

"The foremost fundamental principle regarding subpoenaed discovery is that a subpoena duces tecum to obtain materials in advance of trial should be issued only when the party seeking the materials can show that the materials are evidentiary and relevant." Straily v. UBS Fin. Servs., Inc., No. 07-cv-884-REB-KMT, 2008 WL 5378148, at *1 (D. Colo. Dec. 23, 2008); 81 Am. Jur. 2d Witnesses § 20. The term "relevant" as used in Rule 26 is broad, but not exhaustive. While matters which may aid a party in the preparation or presentation of its case are relevant, matters without bearing either as direct evidence or as leads to evidence are not within the scope of inquiry. See Lewis v. United Air Lines Transp. Corp., 27 F.Supp. 946 (D. Conn. 1939). Here, the Subpoenaed information is not relevant to the causes of action set forth in the Complaint.

In this lawsuit Plaintiff has alleged three causes of action – copyright infringement, contributory copyright infringement, and conspiracy to commit direct and

contributory copyright infringement – against a single John Doe Defendant. Although Plaintiff has set forth blanket accusations regarding 1,385 ISP subscribers that it refers to as "joint tortfeasors," Plaintiff has not named any of these "joint tortfeasors" as Defendants in its Complaint.

### 1. The Discovery Request is Irrelevant Because it Does Not Pertain to the Parties to this Action

The discovery requested by the Subpoena is irrelevant to this case because it concerns separate and unrelated alleged wrongs that Plaintiff contends were committed by individuals who are not parties to this suit. Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 352 n.17 (1978) ("when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied"); see also Am. Family Mut. Ins. Co. v. Minor, 2007 WL 4365694, at *1 (D. Colo., Dec. 10, 2007) ("courts must be vigilant to ensure that its processes are not used improperly for purposes unrelated to their role"). Although Plaintiff contends that it may seek leave to join the alleged "joint tortfeasors" as defendants in this action, Plaintiff has not yet done so and the requested discovery is irrelevant until such a time. Further, Plaintiff is surely aware that by naming the "joint tortfeasors" as Defendants the substantive misjoinder and personal jurisdictional defects of this lawsuit would become more easily visible to the Court.

Joinder based on Plaintiff's action for conspiracy to commit copyright infringement would be improper, as that claim is preempted by the Copyright Act and

should be dismissed by this Court sua sponte.[3] E.g. Tegg Corp. v. Beckstrom Elec. Co., 650 F.Supp.2d 413 (W.D. Penn. 2008) (after extensive case law analysis, dismissing claim of civil conspiracy as preempted by the Copyright Act); see also Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (court may dismiss a claim sua sponte for failure to state a claim upon which relief can be granted) (citing McKinney v. Oklahoma, 925 F.2d 363, 365 (10th Cir. 1991)).

Plaintiff implicitly acknowledges that it will not seek leave to join alleged "joint tortfeasors" who are not subject to this Court's jurisdiction as Defendants in this lawsuit.[4] Movant does not reside in Colorado and lacks any meaningful or continuing contacts with this forum. (See Exhibit "A", Declaration of John Doe, which is incorporated by reference herein as if set forth verbatim herein.)[5] Movant lacks the necessary contacts required to confer jurisdiction pursuant to Colorado's long-arm statute, Colo. Stat. § 13-

---

[3]     As the Plaintiff cannot obtain recovery under this cause of action, which is so obviously preempted by the Copyright Act, it should not be considered in the Court's determination of whether the discovery sought through Plaintiff's Subpoena is relevant to this case.

[4]     This limitation on joinder is recognized by the Plaintiff. (See Compl. ¶ 46 ("Plaintiff intends to seek leave of the Court to amend this complaint to join John Doe's joint tortfeasors as defendants in this action pursuant to Fed. R. Civ. P. 20(a)(2), subject to the constraints of venue and personal jurisdiction") (emphasis added).)

[5]     Evidence may be submitted by an unsworn declaration that is dated and subscribed by the declarant as true under the penalty of perjury in lieu of a notarized affidavit. 28 U.S.C. § 1746; Thomas v. U.S. Dept. of Energy, 719 F.2d 342, 344 n.3 (10th Cir. 1983) ("28 U.S.C. § 1746 (1976) specifically authorizes the use in federal proceedings of unsworn declarations given under penalty of perjury in lieu of affidavits"); Rader v. U.S., No. 08-cv-02639-REB-KMT, 2009 WL 3068097, at *4 (D. Colo. June 1, 2009) ("under 28 U.S.C. §1746(2), if a document must be signed under oath and was not, the individual can alternatively submit a signed and dated, unsworn declaration in which the individual declares under penalty of perjury that the document is true and correct").

1-124. Moreover, Movant lacks the "minimum contacts" necessary to confer personal jurisdiction as set forth by the U.S. Supreme Court in International Shoe Co. v. State of Washington, 326 U.S. 316, 316 (1945) and its progeny. Because this Court lacks personal jurisdiction over John Doe, Plaintiff will not be able to, and admits that it will not attempt to, name John Doe as a Defendant in this lawsuit. Accordingly, the discovery requested through the Subpoena irrelevant to this case. As such, this Court should issue a protective order prohibiting or limiting the disclosure of John Doe's personally identifying information by CHARTER.

Even if this Court had personal jurisdiction over the Movant, joinder would still be improper. Joinder is appropriate under the Federal Rules only if:

(A)   any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

(B)   any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). However, even if these parameters are met, joinder is not necessarily mandatory. The Court may order separate trials to protect any party against "embarrassment, delay, expense, or other prejudice." See Fed. R. Civ. 20(b). Where misjoinder occurs, the court may, on just terms, add or drop a party so long as "no substantial right will be prejudiced by severance." AF Holdings, LLC v. Does 1-97, No. C-11-3067-CW(DMR), slip op., 2011 WL 2912909, at *2 (N.D. Cal. July 20, 2011) (quoting Coughlin v. Rogers, 130 F.3d 1348, 1350 (9th Cir. 1997)).

Plaintiff's claims against Defendant John Doe and alleged "joint tortfeasor" John Doe would not arise out of "the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2). Plaintiff would like this Court to believe that the mere use of BitTorrent Protocol by the Defendant and individual "joint tortfeasors" would be sufficient to sustain their joinder in this action. However, the Defendant's alleged use of BitTorrent Protocol does not necessitate the inference that he or she had any interaction with any of the other 1,385 ISP subscribers referred to as "joint tortfeasors" in this case. Numerous courts handling similar cases have found that alleged copyright infringement through the use of BitTorrent Protocol is insufficient to sustain permissive joinder.[6]

As noted in a similar case decided in the Eastern District of New York:

> Much of the BitTorrent protocol operates invisibly to the user – after downloading a file, subsequent uploading takes place automatically if the user fails to close the program. Exhibit D to the complaints, which allegedly documents the "interactions" between defendants, is a page of machine instructions which clearly demonstrate that the user plays no role in these interactions. Indeed, "[t]he bare fact that Doe clicked on a command to participate in the BitTorrent Protocol does not mean that they were part of the downloading by unknown hundreds or thousands of individuals across the country or across the world." Hard Drive Prods., Inc. v. Does 1-188, 809 F.Supp.2d 1150, 1163 (N.D. Cal. 2011).

---

[6]   *See In re: BitTorrent Adult Film Copyright Infringement Cases*, No. 2:11-cv-3995-DRH-GRB (E.D.N.Y. May 1, 2012); *Liberty Media Holdings, LLC v. BitTorrent Swarm*, 277 F.R.D. 672 (S.D. Fla. 2011) (severing defendants); *Liberty Media Holdings, LLC v. BitTorrent Swarm*, 277 F.D.R. 669 (S.D. Fla. 2011) (severing defendants); *Raw Films, Inc. v. Does 1-32*, No. 1:11-CV-2939, slip op., 2011 WL 6840590 (N.D. Ga. Dec. 29, 2011) (order severing defendants); *Patrick Collins, Inc. v. Does 1-35*, No. 1:11-CV-02940 (N.D. Ga. Dec. 19, 2011) (order severing defendants); *K-Beech, Inc. v. Does 1-63*, No. 1:11-CV-2941-CAP (N.D. Ga. Dec. 5, 2011) (order severing defendants); *Third Degree Films v. Does 1-3577*, No. C11-02768 LB, slip op., 2011 WL 5374569 (N.D. Cal. Nov. 4, 2011); *Hard Drive Productions, Inc. v. Does 1-30*, No. 2:11-CV-345, slip op., 2011 WL 4915551 (E.D. Va. Oct. 17, 2011) (severing defendants); *K-Beech, Inc. v. Does 1-78*, No. 5:11-CV-05060 (E.D. Penn. Oct. 3, 2011) (order severing defendants).

In re: BitTorrent Adult Film Copyright Infringement Cases, No. 2:11-cv-3995-DRH-GRB, Order & Report & Recommendation [Doc. No. 39], at 19 (E.D.N.Y. May 1, 2012); see also Liberty Media Holdings, LLC v. BitTorrent Swarm, 277 F.R.D. 672, 675 (S.D. Fla. 2011).

Further, courts have reasoned that defendants in analogous lawsuits were improperly joined based the large time span between each defendant's alleged sharing of the file. Raw Films, Inc. v. Does 1-32, No. 1:11-CV-2939-TWT, slip. op., 2011 WL 6840590, at *2 (N.D. Ga. Dec. 29, 2011) (time span of more than 4 months); K-Beech, Inc. v. Does 1-63, No. 1:11-CV-02941-CAP, at 6 (N.D. Ga. Dec. 5, 2011) (time span of almost 3 months); Liberty Media Holdings, LLC, 277 F.R.D. at 675 (time span of 2 months); Liberty Media Holdings, LLC v. BitTorrent Swarm, 277 F.R.D. at 671 (time span of 2 months); Hard Drive Prods., Inc., 809 F.Supp.2d 1150, 1163 (time span of 6 weeks).

In Raw Films, Inc., the court found that "[d]ownloading a work as part of a swarm does not constitute 'acting in concert' with one another, particularly when the transactions happen over a long period." 2011 WL 6840590, at *2; see also K-Beech, Inc., No. 1:11-CV-02941-CAP, at 4 (N.D. Ga. Dec. 5, 2011) (order granting motion to sever). In explanation of that finding, the court reasoned that:

> [t]he differing dates and times of each Defendant's alleged sharing do not allow for an inference that the Defendants were acting in concert. While the Defendants may have used the same peer-to-peer system, the Complaint does not allege that they were sharing with each other. For example, Doe 4, who is alleged to have been in the swarm on July 13, 2011, is unlikely to have been in the swarm at the same time as Doe 5, who is alleged to have been in the swarm on March 4, 2011.

Raw Films, 2011 WL 6840590 at *2; see also K-Beech, Inc., No. 1:11-CV-02941-CAP, at 5-6 (N.D. Ga. Dec. 5, 2011).

Exhibit A to the Complaint shows that the transactions or occurrences of alleged infringement happened throughout a time span of more than **FIVE (5) weeks**. (See Compl. Ex. A.) Specifically, Plaintiff alleges that the John Doe Defendant and John Doe were online and engaged in copyright infringement **THIRTEEN (13) days** apart from each other. See Id. Plaintiff has failed to allege that the John Doe Defendant was simultaneously online and using BitTorrent Protocol with alleged "joint tortfeasor" John Doe as would be necessary for them to engage in file sharing with each other.

Plaintiff's allegations that Defendant and the alleged "joint tortfeasors" committed the same type of violation in the same way simply does not equate to participation in the same transaction, occurrence, or series of transactions or occurrences. See LaFace Records, LLC v. Does 1-38, No. 5:07-CV-298-BR, 2008 WL 544992, at *7 (E.D.N.C. Feb. 27, 2008). Thus, joinder of John Doe as a Defendant in this action would be improper, therefore rendering the discovery of John Doe's personally identifying information requested through the Subpoena directed at CHARTER irrelevant in this lawsuit. As such, this Court should issue a protective order prohibiting or limiting the disclosure of John Doe's personally identifying information by CHARTER.

## 2. The Discovery Requested is Irrelevant Because it Will Not Identify Infringers of Plaintiff's Copyright

Many courts have recognized that "the ISP subscribers to whom a certain IP address was assigned may not be the same person who used the Internet connection for

illicit purposes." SBO Pictures, Inc. v. Does 1-3036, No. 11-4220 SC, 2011 WL 6002620, at *3 (N.D. Cal. Nov. 30, 2011); e.g. Pac. Century Int'l Ltd. v. Does 1-101, No. C-11-02533-DMR, 2011 WL 5117424, at *2 (N.D. Cal. Oct. 27, 2011).

An IP address provides only the location at which one of any number of computer devices may be deployed, especially when used with a wireless router.[7] The United States District Court for the Eastern District of New York noted that:

> If you only connect one computer to the Internet, that computer can use the address from your ISP. Many homes today, though, use routers to share a single Internet connection between multiple computers. Wireless routers have become especially popular in recent years, avoiding the need to run network cables between rooms. If you use a router to share an Internet connection, the router gets the IP address issued directly from the ISP. Then, it creates and manages a subnet for all the computers connected to that router.

In re: BitTorrent Adult Film Copyright Infringement Cases, No. 2:11-cv-3995-DRH-GRB, Order & Report & Recommendation [Doc. No. 39], at 7 (E.D.N.Y. May 1, 2012) (quoting "What is an IP address?" available at http://computer.howstuffworks.com/internet/basics/question5492.htm).

Thus, it is no more likely that the ISP subscriber carried out a particular computer function than to say an individual who pays a home telephone bill made a specific call. It is possible that any family member living in that household, or visitor of that household, could have performed the complained of infringement. Unless the wireless router had been appropriately secured (and that security had not been compromised), neighbors or a

---

[7]     One study has shown that 61% of all U.S. homes now have wireless access to the Internet. Lardinois, F., "Study: 61% of US Households Now Have WiFi," available at http://techcrunch.com, 4/5/2012.

passerby could assess the Internet using the IP address assigned to a particular subscriber and download Plaintiff's film. Illustrating this fact, the court in VPR International v. Does 1-1017, 2:11-cv-02068-HAB-DGB (C.D. Ill. Apr. 29, 2011) cited an instance involving a raid by federal agents on a home that was linked to downloaded child pornography:

> The identity and location of the subscriber were provided by the ISP. The desktop computer, iPhones, and iPads of the homeowner and his wife were seized in the raid. Federal agents returned the equipment after determining that no one at the home had downloaded the illegal material. Agents eventually traced the downloads to a neighbor who had used multiple IP subscribers' Wi-Fi connections (including a secure connection form the State University of New York).

Id. at 2 (citing Carolyn Thompson, Bizarre Pornography Raid Underscores Wi-Fi Privacy Risks (April 25, 2011), www.msnbc.msn.com/id/42740201/ns/technology_and_science-wireless/).

These circumstances create serious doubt as to Plaintiff's claim that the expedited discovery sought will produce "information sufficient to identify each of John Doe and his joint tortfeasors." (Mot. for Exp. Disc. [Doc. No. 6], at 1.) As one judge observed:

> The Court is concerned about the possibility that many of the names and addresses produced in response to Plaintiff's discovery request will not in fact be those of the individuals who downloaded "My Little Panties # 2." The risk is not purely speculative; Plaintiff's counsel estimated that 30% of the names turned over by ISPs are not those of the individuals who actually downloaded or shared copyrighted material.

Digital Sin, Inc. v. Does 1-176, --F.R.D.--, 2012 WL 263491, at *3 (S.D.N.Y. Jan. 30, 2012) (emphasis added); also SBO Pictures, 2011 WL 6002620, at *3.

Further, studies have shown that the type of tracking software used by investigators, such as 6881 Forensics, LLC, to identify BitTorrent users often produces a

large number of false positive IP hits. One study performed by the Department of Computer Science and Engineering at the University of Washington determined that "copyright holders utilize inconclusive methods for identifying infringing BitTorrent users. [The Researchers] were able to generate hundreds of DMCA takedown notices for machines under [their] control at the University of Washington that were not downloading or sharing any content." Michael Piatek et al., Challenges and Directions for Monitoring P2P File Sharing Networks –or– Why My Printer Received a DMCA Takedown Notice, 3rd USENIX Workshop on Hot Topics in Security 2008, (July 29, 2008)           http://www.usenix.org/event/hotsec08/tech/full_papers/piatek/piatek.pdf. Specifically, the article concludes:

> [W]e find that it is possible for a malicious user (or buggy software) to implicate (frame) seemingly any network endpoint in the sharing of copyrighted materials. We have applied these techniques to frame networked printers, a wireless (non-NAT) access point, and an innocent desktop computer, all of which have since received DMCA takedown notices but none of which actually participated in any P2P networks.

Id.

Accordingly, not only is the information sought by Plaintiff regarding the identity of John Doe irrelevant to this lawsuit based on the fact that John Doe is not, and cannot be properly joined as, a Defendant to the suit, is not subject to the personal jurisdiction of this Court, and (as common sense would dictate) has no material knowledge as to the separate and unrelated actions of the John Doe Defendant, but the inaccuracy of the tracking software and the fact that many individuals will often access the Internet through the same ISP account renders the information sought irrelevant. As such, this Court

should issue a protective order prohibiting or limiting the disclosure of John Doe's personally identifying information by CHARTER.

### D. A Protective Order Should Be Issued to Protect Movant From Annoyance, Embarrassment, Oppression, and Undue Burden and Expense, and/or Disclosure of Confidential Information

"Restrictions on discovery may be broader where a non-party is the target of discovery to protect such third parties from unnecessary harassment, inconvenience, expense or disclosure of confidential information." In re Condor Diamond Corp., 26 B.R. 847, 849 (S.D.N.Y. 1983) (citing Dart Indus. Co. v. Westwood Chem. Co., 649 F.2d 646, 649 (9th Cir. 1980); Pollitt v. Mobay Chems. Corp., 95 F.R.D. 101, 103 (S.D. Ohio 1982)); Fed. R. Civ. P. 26(c).

Numerous courts have observed that subpoenas directed at ISPs seeking the personally identifying information of account holders issued in lawsuits brought by pornographers, such as Sunlust Pictures, are not likely to result in claims being litigated on the merits. Rather, such information will be used for the exclusive purpose of embarrassing the ISP subscribers in attempts at coercing them into oppressive settlements through the use of Plaintiff's non-attorney agents that operate similarly to collection agencies. E.g. Digital Sin, 2012 WL 263491, at *3 ("This risk of false positives gives rise to the potential for coercing unjust settlements from innocent defendants such as individuals who want to avoid the embarrassment of having their names publicly associated with allegations of illegally downloading 'My Little Panties # 2'"); VPR International, No. 2:11-cv-2068-HAB-DGB, Order [Doc. No. 15], at 3 ("Could expedited discovery be used to wrest quick settlements, even from people who have done nothing

wrong? The embarrassment of public exposure might be too great, the legal system too daunting and expensive, for some to ask whether VPR has competent evidence to prove its case").

Additionally, the Subpoena seeks confidential personally identifying information that CHARTER has on file about its subscriber John Doe. In passing the Cable Communications Act of 1984, Congress recognized that subscribers have a privacy interest in their personally identifying information on record with their ISPs. H.R. Rep. 98-934, at *79 ("The Congress is recognizing a right of privacy in personally identifiable information collected and held by a cable company...") (emphasis added); see also 47 U.S.C. § 551(c)(2).[8]

The expedited discovery sought through Plaintiff's Subpoena is likely to annoy, embarrass, and humiliate the Movant, and the costs and publicity of defending himself against this pornographer in an out of state federal court would be oppressive. It is also oppressive in so far as it is intended to coerce the Movant into settling Plaintiff's claims for thousands of dollars in order to avoid the embarrassment of being associated with pornography. Further, without establishing its entitlement to the information sought by a "good cause" need for expedited discovery of information that is irrelevant to this lawsuit, the Subpoena seeks discovery confidential information, in which Congress has recognized the Movant's right to privacy. As such, this Court should issue a protective order preventing or limiting the disclosure of John Doe's personally identifying

---

[8]     Many ISPs, including CHARTER, qualify as "cable operators" as defined by 47 U.S.C. § 522(5).

information by CHARTER.

## III. CONCLUSION

Plaintiff has demonstrated that it is far more interested in obtaining ISP subscribers' contact information for use in extracting large settlements than the formalities of the legal process and privacy interests of the affected individuals. Plaintiff has failed to identify John Doe or any of the 1,385 alleged "joint tortfeasors" as Defendants in this lawsuit, yet it seeks discovery of their confidential personally identifying information on record with their ISPs. Joinder of John Doe as a defendant in this lawsuit would be improper as this Court lacks personal jurisdiction over John Doe and the activities alleged against the Defendant do not arise out of the same transaction or occurrence as the accusations made against the alleged "joint tortfeasor" John Doe. The discovery sought by the Subpoena will subject John Doe to annoyance, embarrassment, undue burden, is oppressive, and seeks information to which he has a congressionally recognized right to privacy.

WHEREFORE, premises, considered, John Doe respectfully requests that this Court:

(a) Act sua sponte to dismiss Plaintiff's claim of civil conspiracy and/or all causes of action pursuant to Fed. R. Civ. P. 12;

(b) Issue a protective order pursuant to Fed. R. Civ. P. 26 and/or 30(d) prohibiting the ISP CHARTER from disclosing any of John Doe's personally identifying information;

(c) Order that any party seeking to file with the Court any of John Doe's confidential and personally identifiable information obtained from CHARTER in response to Plaintiff's March 26, 2012 Subpoena shall make such a filing as a Restricted Document with an accompanying Motion to Restrict Access, and otherwise be in compliance with Local Rule 7.2;

(d) Dismiss this case in its entirety, permitting the Plaintiff, if it so chooses, to re-file against the Defendant and/or each "joint tortfeasor" as a defendant in separate lawsuits, subject to the restraints of venue and personal jurisdiction; and/or

(e) Grant such other and further relief to which John Doe may justly be entitled.

Dated: 5/20/2012

Respectfully submitted,

By: /s/ John Doe .
John Doe
*Pro Se*
doe6422@gmail.com

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

SUNLUST PICTURES, LLC,               CASE NO.:12-CV-00656-CMA-KMT

     Plaintiff,

vs.

JOHN DOE,

     Defendant.

## DECLARATION OF John Doe IN SUPPORT OF MOTION TO DISMISS AND/OR ISSUE A PROTECTIVE ORDER

**Movant John Doe declares under penalty of perjury as follows:**

1.     I make this Declaration in support of my Omnibus Motion to Dismiss, Sever, and/or Quash the Subpoena (the "Omnibus Motion") in the above captioned case.

2.     I make this Declaration as "John Doe", purported "joint tortfeasors" listed in Exhibit A to Plaintiffs Complaint [Doc. No. 1-1) in the above captioned case, so as not to disclose my identity or any personally identifying information about me as sought by Sunlust Pictures, LLC through its subpoena (the "Subpoena") to my Internet Service Provider, CHARTER COMMUNICATIONS, INC.

3.     I have received a copy of a Subpoena and correspondence dated May 8, 2012 from CHARTER COMMUNICATIONS, INC. stating, among other things, that:

    a.   CHARTER COMMUNICATIONS, INC. received a Subpoena in the above captioned case seeking disclosure of customer information associated with the IP Addresses;

    b.   CHARTER COMMUNICATIONS, INC. is not a party to the lawsuit, and has taken no part in this filing;

4.     A redacted copy of the accompanying correspondence I received from CHARTER COMMUNICATIONS, INC. is attached as Exhibit "1" to this Declaration and is incorporated herein as if set forth verbatim herein.

5.     A true and correct copy of the above-mentioned Subpoena is attached as Exhibit "2" to this Declaration and is incorporated herein as if set forth verbatim herein.

1



6.      Exhibit A to Complaint [Doc. No. 1-1], which Plaintiff purports to list the IP addresses of Defendant's "joint tortfeasors" along with the time of their alleged infringement, identifies the IP address as having infringed Plaintiff's copyright.

7.      I am not a resident of Colorado and have never been a resident of Colorado.

8.      I have not contracted to insure any person, property, or risk in Colorado.

9.      I have not committed a tortious act in Colorado.

10.      I have never caused an injury to persons or property within Colorado.

11.      I have not operated, conducted, engaged in or carried on any business or business venture in Colorado, nor do I have an office or agency in Colorado.

12.      I do not regularly do or solicit business in Colorado.

13.      I do not derive any income, much less substantial income, from any activities connected with Colorado.

14.      I have never entered into or breached a contract in Colorado.

15.      I have never traveled to Colorado, either for business or personally.

16.      The IP address allegedly assigned to me by CHARTER COMMUNICATIONS, INC. is for a cable connection located outside of Colorado.

17.      I do not engage in any persistent course of conduct in Colorado.

18.      I have no substantial or regular and systematic contacts with Colorado.

19.      I do not consent to personal jurisdiction in the state of Colorado.

20.      Should the Court require or request me to do so, I will file a notarized version of this Declaration, which includes my personal information. I will, however, seek to file such an Affidavit under seal.

**FURTHER DECLARANT SAYETH NAUGHT**

Under penalty of perjury, I declare that the foregoing facts are true and correct.

EXECUTED, this 20 day of MAY, 2012

By: /s/ John Doe       .
**John Doe**
*Pro Se*
doe6422@gmail.com



Charter Communications, Inc
Legal Department
12405 Powerscourt Dr.
St. Louis, MO 63131
Fax: 314-909-0609

## IMPORTANT LEGAL NOTICE:  PLEASE READ CAREFULLY

May 8, 2012

### *OBJECTION DEADLINE*

# May 22, 2012, 4:00 pm CT

### References Used In This Notice

- Court Case: Sunlust Pictures, LLC (the "Plaintiff") v. Doe, Court Case No. 1:12-cv-00656-CMA-KMT
- Court: United States District Court for the District of Colorado
- Copyrighted Work: Unknown
- Identifying Information: Accountholder Name, Address(es), Telephone Number, Email Address(es), IP log
- Charter Case Number: ███
- Your ID Number: ███

Dear Sir or Madam:

Charter has received a subpoena from attorneys for the Plaintiff seeking certain information about your Charter internet account ("Account"), including the Identifying Information listed above. The Court has issued an order compelling Charter to disclose this information relating to your Charter Account. Charter respects the privacy of its subscribers, and will disclose customer information only to the extent required by law, as indicated in Charter's privacy policy on www.charter.com. Because a court order authorizes the Plaintiff to obtain this information, Charter must disclose these records unless you formally oppose disclosure in the Court <u>by the objection deadline stated above</u>. Copies of the court order and subpoena are attached, as well as any other documentation that may have been court-ordered to be provided with this notice.

Charter records indicate that an IP address listed on an exhibit to the subpoena was assigned to your Account at the given date and time. Below is a copy of the log that associates the IP with your Account in this format: IP Address – Modem MAC – CPE MAC – IP Lease Start Time – IP Lease End Time.

<u>**Please note**</u>: Charter cannot provide you legal representation and cannot object to the subpoena or court order on your behalf. If you wish to take action in this matter, you should contact an attorney immediately, who can advise you of your specific legal rights. If you intend to oppose the order, you should do so without delay in the court identified in the subpoena and order. **<u>AN OBJECTION MADE SOLELY TO CHARTER IS INSUFFICIENT; OBJECTIONS MUST BE MADE DIRECTLY TO THE COURT. HOWEVER, CHARTER MUST BE NOTIFIED OF AN OBJECTION NO LATER THAN THE OBJECTION DEADLINE GIVEN ABOVE.</u>**

If you file an opposition to the order, you or your attorney should provide a copy of the objection you submitted with the Court to Charter (attention "Legal – File-Sharing Team" via facsimile at 314-909-0609) by <u>the objection deadline stated above</u> so that Charter may withhold disclosure of your information. **<u>PLEASE CLEARLY INDICATE IN YOUR COPY TO CHARTER (1) THAT YOUR OBJECTION WAS MADE TO THE COURT AND (2) PROVIDE YOUR NAME AND ADDRESS OR A COPY OF THIS LETTER, EVEN IF YOUR OBJECTION TO THE COURT IS ANONYMOUS. WITHOUT THIS INFORMATION CHARTER CANNOT WITHHOLD DISCLOSURE OF YOUR INFORMATION.</u>**

# Exhibit "1"

Please note that the objection deadline provided in this letter and the due date on the subpoena may not coincide as Charter may have been granted an extension to fulfill its obligations under this court order.

Questions regarding your legal rights should be directed to the attorney of your choice. If you or your attorney has questions regarding the subpoena itself, you should contact the requestor directly. If you have any questions regarding your Account, Charter's policies or this correspondence, you should review the attached FAQs or the named accountholder may call Charter's Security Department directly at 866-228-0195. Please have this letter in hand if you call because you will be asked to confirm information contained herein.

Sincerely,

**Charter Communications, Inc.**

Enclosures

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
## for the
### Northern District of Illinois

| | | |
|---|---|---|
| SUNLUST PICTURES, LLC | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   1:12-cv-00656-CMA-KMT |
| JOHN DOE | ) | |
| | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | District of Colorado     ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   Subpoena Compliance/Custodian of Records: Charter Communications, LLC c/o Illinois Corporation Service Copmany, 801 Adlai Stevenson Dr., Springfield, IL 62703.

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: in accordance with the conditions in the attached order, provide the name, current (and permanent) addresses, telephone numbers, e-mail addresses and Media Access Control addresses of all persons whose IP addresses are listed in the attached spreadsheet. We will be pleased to provide data to you in the most efficient and cost effective format if you let us know what your preferred format is.

| Place: Prenda Law Inc. 161 N Clark St. Suite 3200 Chicago, IL 60601 | Date and Time: 05/07/2012 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:   ___03/26/2012.___

| CLERK OF COURT | OR | |
|---|---|---|
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail, and telephone number of the attorney representing *(name of party)* _____ Sunlust Pictures, LLC _____, who issues or requests this subpoena, are:
Paul Duffy, Prenda Law, Inc., 161 N. Clark St. Suite 3200, Chicago IL 60601; paduffy@wefightpiracy.com; (312) 880-9160

# Exhibit "2"